UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X
UNITED STATES OF AMERICA,

    - against -

ALEXIS HERNANDEZ,

              Defendant.
-------------------------------------------X

04 Cr. 424-20 (RWS)

SENTENCING OPINION

6|13|05

**Sweet, D.J.,**


          On March 23, 2005, Defendant Alexis Hernandez ("Hernandez") appeared before the Honorable Ronald L. Ellis of this district and allocuted to the conduct charged in the sole count of the indictment, conspiracy in violation of 21 U.S.C. § 846 to distribute and possess with intent to distribute one kilogram and more of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A). Hernandez's plea was accepted on June 10, 2005. Hernandez will be sentenced to 120 months' imprisonment and five years' supervised release. A special assessment fee of $100 is mandatory and is due immediately.



**Prior Proceedings**


          On May 6, 2004, the government filed a sealed indictment against Hernandez and his co-defendants, charging them with a

single count of violating 21 U.S.C. § 846, conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin. The indictment was unsealed on May 11, 2004, and an arrest warrant for Hernandez was issued on the same day. Hernandez was arrested on August 25, 2004, and he has remained in custody since that time. Hernandez entered a guilty plea on March 23, 2005, which this Court accepted on June 10, 2005, and currently Hernandez is scheduled for sentencing on June 13, 2005.

## The Sentencing Framework

In accordance with the Supreme Court's decision in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), and the Second Circuit's decision in <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. Thus, the sentence to be imposed here is the result of a consideration of:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed --

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for --

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5) any pertinent policy statement ... [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

Hernandez was born in Puerto Rico on November 14, 1980. He is the older of two children born to his parents and, after the

age of three, moved to Brooklyn with his family. He reports that both his mother and father were drug addicts, frequently using marijuana and heroin in his presence. He describes a difficult upbringing and an unstable home where his parents argued constantly, until they ultimately separated when defendant was ten years old. After his parents' separation, Hernandez moved to the Bronx with his mother, and they lived in shelters for over a year until they finally were able to secure an apartment on Daly Avenue.

As a child, Hernandez claims he felt lifeless, as though he had nothing to live for. To distract himself, Hernandez, at age eleven, was using marijuana regularly and experimenting with heroin; by the age thirteen, Hernandez was buying heroin on the street for himself, using an average of two or three bags each day. He also had begun experimenting with PCP. To support his drug addiction, Hernandez began stealing from his mother and on the street.

Hernandez's father recovered from his own addiction and reappeared when Hernandez was fifteen years old. Learning of his son's drug use, Hernandez's father moved Hernandez back to Brooklyn. Although his father intervened and brought Hernandez to live with him, and away from his former life on Daly Avenue, Hernandez's drug use did not stop but, on the contrary, escalated. Hernandez began using crack at age sixteen and used that drug everyday for approximately two years.

4

Hernandez previously has attempted two different detox programs but has not been able to complete a program to date. He recognizes his need for substance abuse treatment.

Though Hernandez has never married, he has maintained a stable relationship with his girlfriend, and now fiancé, for three years. They have a daughter, who is eight months old. Four months prior to his arrest in August 2004, Hernandez moved to Connecticut with his partner and daughter to get away from his troubles in New York. His fiancé reports Hernandez to be a good father and husband and describes a stable home life in Connecticut. Hernandez plans to return to Connecticut upon his release.

In addition to his long history of drug abuse, Hernandez suffers from mental health problems, including anxiety and depression. While incarcerated on an unrelated offense, he was treated by a psychologist and medicated accordingly. At this time, Hernandez is not under the care of any mental health professional and is not receiving any medication.

Hernandez completed seventh grade, subsequently dropping out of school due to his drug use. He taught himself to read and write three years ago and now strives to earn his general equivalency diploma, or G.E.D.

Hernandez has held various construction-based jobs over the years but reports no assets.

Hernandez has several prior criminal convictions. He was sentenced on December 14, 2000, to one year to three years incarceration after a conviction for attempted criminal sale of a controlled substance in the third degree. He was released on parole on September 14, 2001, after serving nine months. His parole was revoked nine months later on June 15, 2002, and he was released at the expiration of his sentence on September 5, 2003, after serving another fifteen months incarcerated.

Also on December 14, 2000, Hernandez pled guilty to a different charge of criminal sale of a controlled substance in the third degree, which occurred at a different time from the sale underlying his first conviction. For this second conviction, he received a one to three year term of imprisonment to run concurrently with the previously imposed sentence.

On January 17, 2002, Hernandez was sentenced to ninety days imprisonment after pleading guilty to a misdemeanor drug possession charge in Brooklyn. On that same date, Hernandez pled guilty to a second misdemeanor charge of criminal possession of a controlled substance, arising out of an incident occurring at a different time and a different place from the first misdemeanor conviction. He was sentenced to second term of ninety days

imprisonment to run concurrently with the initially imposed ninety day sentence.

On December 9, 2003, Hernandez was convicted of criminal sale of a controlled substance, but sentence for that conviction remains pending. As that offense is related to the instant case, presumably the sentence for that conviction will be subsumed by the sentence in this case.

## The Offense Conduct

The indictment filed in this action charges that from at least 1999 through May 2004, Hernandez, along with his nineteen co-defendants and others, were members of a criminal organization in the Bronx that controlled a three-block strip of Daly Avenue between East 179th Street and Bronx Park South (the "Daly Avenue Organization" or the "Organization"). According to the indictment, the Organization sold heroin all day and late into the night during the period identified in the indictment, conducting tens of thousands of hand-to-hand heroin transactions. The Organization operated out of several buildings, including 2105 Daly Avenue and 2114 Daly Avenue.

Hernandez was a "worker" or "pitcher" for the Organization. Workers or pitchers for the Organization would be provided heroin on consignment by managers in the Organization, and would then sell the heroin to customers, paying the managers for the heroin as they were able to sell it. Workers and pitchers also acted as "steerers," directing customers on Daly Avenue to other workers or to managers to complete sales of heroin. According to the indictment, eleven of Hernandez's co-defendants also acted as workers or pitchers.

Based on trial testimony before the Court, the Organization sold an average of twenty-five bundles of heroin a day, which amounts to approximately half of a kilogram per month, although the actual amount could vary from month to month.[1] With

_____

[1] Although the government asserts that the Organization sold as much as fifty bundles of heroin a day, which is the equivalent of 500 glassines of heroin a day, trial testimony of cooperating witnesses, who are former members of the Organization, reveals that the sale of forty to fifty bundles was the "biggest number of bundles [the witness could] ever remember selling in one day." (Trial Trans. p. 137). That same witness a few moments later then said, in response to further questioning by the government, that "the most bundles is like probably eighty to a hundred." (Tr. Trans. p. 137).

However, a different cooperating witness testified on direct examination that "on an average day" he would be able to sell "anywhere from a couple of bundles, like two bundles, three bundles, all the way up to thirty bundles." (Tr. Trans. p. 387). On a slow day he would sell "anywhere from five bundles or less," and on a "really busy day, anywhere like up to eighty bundles." (Tr. Trans. p. 388). But, he then testified that this latter number was not based on his own experience -- but rather gleaned "from talk because you just like hear the guys either complaining about how little drug money they made or they could be boasting about how much drugs they sold that day." (Tr. Trans. p. 388).

respect to Hernandez specifically, the Court estimates that he should be held accountable for conspiring to distribute between 3 and 10 kilograms of heroin during his seven-month involvement (from September 2003 through March 2004) with the conspiracy.

Hernandez was arrested on August 25, 2004, in Connecticut.

## The Relevant Statutory Provisions

The statutory minimum term of imprisonment for the sole count of the indictment is ten years and the maximum term is life, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. If a term of imprisonment is imposed, the Court subsequently shall impose a term of supervised release of at least five years pursuant to 21 U.S.C. § 841(b)(1)(A).

Hernandez is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to 18 U.S.C. § 3561(a)(2) and 21 U.S.C. § 841(b)(1)(A).

The statutory maximum fine is $4 million, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. A special assessment of $100 is required. See 18 U.S.C. § 3013.

Since this is Hernandez's third criminal conviction for distribution of a controlled substance, he may be permanently declared ineligible for any or all federal benefits, as determined by the Court pursuant to 21 U.S.C. § 862(a)(1)(B). Federal benefit is defined to mean "'any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States' but 'does not include any retirement, welfare, Social Security, health, disability, veterans benefit, public housing, or other similar benefit, or any other benefit for which payments or services are required for eligibility.'" See 21 U.S.C. § 862(d).

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

**The Guidelines**

The November 1, 2004 edition of the United States Sentencing Commission, <u>Guidelines Manual</u> ("U.S.S.G.") has been used

10

in this case for calculation purposes, in accordance with U.S.S.G. § 1B1.11(b)(1).

The guideline for a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 is found in U.S.S.G. § 2D1.1(a)(2), which specifies that the base offense level is set in accordance with the Drug Quantity Table under U.S.S.G. § 2D1.1(c)(2). At his allocution, Hernandez indicated that he knowingly conspired with others to possess, with intent to distribute, heroin. The Court finds that the amount for which Hernandez should be held accountable is between 3 and 10 kilograms of heroin. In light of this latter amount, and pursuant to the Drug Quantity Table, the base offense level is 34.

Pursuant to U.S.S.G. § 4B1.1,

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. As Hernandez was more than eighteen years of age at the time of the instant controlled substance offense and has two prior controlled substance convictions not arising out of the instant offense conduct, he is a career offender within the meaning of U.S.S.G. § 4B1.1(a).

11

Where the offense level for a career offender calculated pursuant to the table under U.S.S.G. § 4B1.1(b) is greater than the offense level otherwise applicable, the offense level from the table shall apply. In accordance with that table, the offense level determined under § 4B1.1(b) is 37.

Subsection (b) also provides that "[a] career offender's criminal history category in every case under this subsection shall be Category VI." U.S.S.G. § 4B1.1(b). Pursuant to § 4B1.1(b), Hernandez's Criminal History Category is elevated to VI. See, e.g., United States v. Marseille, 377 F.3d 1249, 1252-53 (11th Cir. 2004) (applying the Criminal History Category enhancement where the offense level set forth in the table under § 4B1.1(b) was lower than the offense level otherwise calculated and, thus, inapplicable), petition for cert. filed, -- U.S.L.W. -- (U.S. Oct. 19, 2004) (No. 04-6961); but see United States v. Winbush, 264 F. Supp. 2d 1013, 1016 n.5 (N.D. Fla. 2003) (noting that the Criminal History Category enhancement set forth in § 4B1.1(b) applies, by its terms, only to those cases "under this subsection" and concluding that a defendant whose offense level exceeded the offense level otherwise applicable under subsection (b) was not being sentenced "under this subsection," and, therefore, that the Criminal History Category enhancement was inapplicable).

Based on Hernandez's plea allocution, he has shown recognition of responsibility for the offense. Based on his timely

12

notification of his intention to plead guilty and because the base offense level is greater than 16, the offense level is reduced by three levels pursuant to U.S.S.G. §§ 3E1.1(a) and 3E1.1(b).

The adjusted offense level resulting from the foregoing calculations and discussion is 34.

Based on the offense level of 34 and a Criminal History Category of VI, the guideline range for imprisonment is 262 to 327 months.

The authorized term for supervised release under the guidelines is five years, pursuant to U.S.S.G. § 5D1.2(b).

Hernandez is not eligible for probation because the applicable guideline range is in Zone D of the Sentencing Table, pursuant to U.S.S.G. § 5B1.1(b)(2), comment. n.2.

The fine range for the instant offense under the guidelines is from $17,500 to $4 million, pursuant to U.S.S.G. §§ 5E1.2(c)(3)(A) and 5E1.2(c)(4).

Subject to Hernandez's ability to pay, the expected costs to the government of any imprisonment, probation, or supervised release shall be considered in imposing a fine, pursuant to U.S.S.G. § 5E1.2(d)(7). The most recent advisory from the

Administrative Office of the United States Courts suggests a monthly cost of $1,931.97 to be used for imprisonment, a monthly cost of $292.21 for supervision, and a monthly cost of $1,590.66 for community confinement.

A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

Pursuant to U.S.S.G. § 5F1.6, eligibility for certain federal benefits may be denied to any defendant convicted of distribution or possession of a controlled substance.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guideline analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary" as is required in accordance with the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005) and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2nd Cir. 2005). In particular, section 3553(a)(1) asks that the sentence imposed consider both "the nature and circumstances of the offense and the history and characteristics of the defendant," while section 3553(a)(2)(A) demands that the penalty "provide just punishment for the offense" that simultaneously "afford[s] adequate deterrence to criminal

14

conduct" as required by § 3553(a)(2)(B). Furthermore, pursuant to § 3553(a)(5)(A), "any pertinent policy statement issued by the Sentencing Commission" also must be considered.

Hernandez argues that he should receive the mandatory statutory minimum sentence of 120 months, instead of a sentence within the Guideline range, because his prior criminal convictions are interrelated with his long history of drug addiction and because the convictions relied upon in concluding that he is a career offender pursuant to U.S.S.G. § 4B1.1(a) are given too much weight in the criminal history calculation, thus over-representing the seriousness of Hernandez's prior criminal history.

In formulating the Guidelines, the Sentencing Commission recognized the potential harm of overstating a defendant's criminal history and thus exposing the defendant to punishment far in excess of what may be necessary to deter recidivism. Pursuant to U.S.S.G. § 4A1.3(b)(1),

> If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

U.S.S.G. § 4A1.3(b)(1). A downward departure under this section may be appropriate "if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant

offense and no other evidence of prior criminal behavior in the intervening period." U.S.S.G. § 4A1.3 comment. n.3; see also United States v. Carrasco, 313 F.3d 750, 757 (2d Cir. 2002) ("This type of departure [pursuant to § 4A1.3] is most frequently used when a series of minor offenses, often committed many years before the instant offense, results in a [Criminal History Category] that overstates the seriousness of the defendant's prior record.")

Factors to consider in granting a downward departure under § 4A1.3 may include "the amount of drugs involved in [the defendant's] prior offenses, his role in those offenses, the sentences previously imposed, and the amount of time previously served compared to the sentencing range called for by placement in [Criminal History Category] VI." United States v. Mishoe, 241 F.3d 214, 219 (2d Cir. 2001).

Horizontal downward departures under § 4A1.3 are limited in their extent, as they may not exceed one criminal history category for any defendant deemed a career offender pursuant to U.S.S.G. § 4B1.1. See U.S.S.G. § 4A1.3(b)(3)(A). Under the circumstances present here, however, the Second Circuit has authorized vertical downward departures under U.S.S.G. § 5K2.0(b). See, e.g., United States v. Rivers, 50 F.3d 1126, 1131 (2d Cir. 1995) (noting that "in the case of a defendant whose offense level is raised by his criminal history into career offender status, [the district court's] discretion may be exercised, to the extent

16

thought appropriate, to reduce either the criminal history category or the offense level, or both" where the sentence called for by the guidelines over-represents the seriousness of the defendant's prior criminal history); see also Mishoe, 241 F.3d at 220 ("In some circumstances, a large disparity in that relationship [between the punishment prescribed by Criminal History Category VI and the degree of punishment imposed for prior offenses] might indicate that the career offender sentence provides a deterrent effect so in excess of what is required in light of the prior sentences and especially the time served on those sentences as to constitute a mitigating circumstance present 'to a degree' not adequately considered by the Commission.") (citing 18 U.S.C. § 3553(b)).

While the Sentencing Commission and the aforementioned cases discuss the appropriateness of departing downward within the Guidelines, such analysis preceded the Supreme Court's decision in Booker. Now, post-Booker, the Guidelines are merely advisory, and a sentencing court must consider the Sentencing Commission's intent as just one of several salient factors, see 18 U.S.C. § 3553(a)(5)(A), in determining whether to impose a Guideline sentence or a non-Guideline sentence and the length of such sentence.

The Sentencing Commission intended that the sentencing court carry discretion in determining the appropriateness of categorizing a defendant as a career offender, an intention echoed

by the Second Circuit, and expected that the sentencing court would reduce a defendant's range of punishment if the career offender designation were misplaced. In this case, Hernandez's label as a career offender is, in fact, misplaced.

To begin, Hernandez, despite his young age, is a long-time drug addict. He has suffered from this addiction for the majority of his short life, and all of his criminal convictions (five total, though only four trigger criminal history points) stem from drug-related activity. He has never been accused, arrested or convicted for any crime of violence. Hernandez completed only the seventh grade and did not learn to read or write until just three years ago. Although he reports sporadic employment, Hernandez claims minimal education and few marketable skills with which to sustain employment. As a drug addict with such severely limited job opportunities, Hernandez supported his drug habit by selling drugs.

The fact that Hernandez's prior criminal convictions may have been influenced by or the result of his addiction to heroin, crack, marijuana and other drugs does not provide a sufficient basis for departure under the Guidelines. "Drug or alcohol dependence or abuse is not a reason for a downward departure." U.S.S.G. § 5H1.4; see also U.S.S.G. § 5K2.0(d)(1) (prohibiting departures based on drug or alcohol dependence or abuse); accord United States v. Payton, 159 F.3d 49, 61 (2d Cir. 1998). However,

18

post-_Booker_, such prohibitions provide merely guidance to the sentencing court, and the realities of Hernandez's personal "history and characteristics" must also be considered under 18 U.S.C. § 3553(a)(1).

Furthermore, it must be noted that Hernandez was assigned ten criminal history points for four convictions: three criminal history points for both of the December 14, 2000 convictions; and two criminal history points for both of the January 17, 2002 misdemeanor convictions. While there is no dispute that Hernandez does, in fact, have four separate convictions, he was sentenced only twice. At both sentencings, the court consolidated two convictions and handed down one sentence to cover both offenses, for which the prison time ran concurrently. The state sentencing court did not treat the four separate convictions as warranting four separate punishments. Therefore, assigning criminal history points to each of Hernandez's four convictions, as though they had not been consolidated and treated jointly, gives this Court pause.

According to the Guidelines, two convictions cannot be treated as related cases, and given only one set of criminal history points, if there is an intervening arrest between the commission of the two separate unlawful acts. _See_ U.S.S.G. § 4A1.2 comm.3. Thus, with respect to Hernandez, while two separate unlawful acts had been consolidated for sentencing, under the Guidelines, each of the two acts trigger criminal history points

19

independently because Hernandez was arrested for them separately. Had he committed two unlawful acts but arrested only once, he still could have been convicted for two offenses but only assigned one set of criminal history points.

Given that the Sentencing Commission expected sentencing courts to exercise discretion when labeling defendants as career offenders, this Court takes note of how assigning criminal history points in the manner described above over-represents the severity and magnitude of Hernandez's past criminal conduct. While it goes undisputed that Hernandez has, at the very least, the minimum number of drug convictions (which is two) to expose him to career offender status, the deterrent effect underlying the career offender designation may be achieved in this case without imposing the excessive sentence required pursuant to that designation.

Hernandez was sentenced to a term of one year to three years incarceration on each of the 2000 convictions, which were run concurrently, and he served approximately twenty four months in total (nine months initially, then fifteen months once his parole was revoked). He was sentenced to a term of ninety days on the 2002 misdemeanor convictions, which were also run concurrently, and he served sixty days, having benefitted from the New York state "good time" provision.

Before the instant offense, Hernandez had never spent
more than fifteen months in prison at a stretch. He now faces a
minimum mandatory term of imprisonment of ten years. The
disparity between the sentences imposed and time served with
regard to his earlier convictions and the sentence dictated here
by the career offender categorization is significant. The
Criminal History Category that would have applied were it not for
the career offender designation is V.[2] The adjusted offense
level that would have applied but for Hernandez's career offender
status is 31.[3] The resulting sentencing range would have been
168 to 210 months, a substantially lesser sentence than his
current Guideline sentencing range of 262 to 327 months.[4]

---

[2] Were it not for the career offender designation, Hernandez's
prior convictions would have resulted in a Criminal History
Category of V, based on a total of 10 criminal history points
calculated pursuant to U.S.S.G. §§ 4A1.1(a) and 4A1.1(b).

Had criminal history points not been assigned separately for
each of Hernandez's four convictions, he would have totaled only
five criminal history points and thus fallen into Criminal History
Category III. While the Court takes note of this distinction, for
the purposes of this argument, the Court will adhere to the
Guideline method of assigning criminal history points separately.

[3] Hernandez allocuted to being involved in this conspiracy
from September 2003 (when he returned to the Bronx after his
release from prison) through March 2004 (when he moved to
Connecticut with his fiancé and daughter), totaling seven months.
This court finds the conspiracy distributed approximately 0.5
kilograms of heroin per month, thereby attributing the
distribution of an estimated 3.5 kilograms of heroin to
Hernandez. This quantity triggers a base offense level of 34 and
an adjusted offense level, taking into account the three level
reduction for acceptance of responsibility, of 31.

[4] For the purposes of a complete discussion, it should be
noted that Hernandez, with an adjusted offense level of 31, would
have faced a Guideline range of 135 months to 168 months if in
Criminal History Category III.

When considering the advisory Guideline range, this Court also considers what Hernandez's Guideline range would have been without his career offender designation, given the Sentencing Commission's policy statement warning of the potential over-representation of criminal history due to such designation.

The goal of the career offender classification is to achieve a deterrent effect and to address adequately the concerns regarding recidivism that are reflected in that classification scheme. As the Second Circuit notes in <u>Mishoe</u>,

> Obviously, a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences, particularly the times served, for the prior offenses.

241 F.3d at 220. As Hernandez never has spent more than fifteen months incarcerated, despite his four prior criminal convictions involving a controlled substance, a term of imprisonment significantly greater than any of his previous sentences will achieve the deterrent effect underlying the career offender designation.

Balancing the need for meaningful deterrence with section 3553(a)'s statutory demand to "impose a sentence sufficient, but not greater than necessary, to comply with the

purposes" of sentencing, see 18 U.S.C. § 3553(a), this Court believes a non-Guideline sentence is warranted. See United States v. Carvajal, 2005 WL 476125, at *5 (S.D.N.Y. Feb. 22, 2005) (stating, "But [the Career Offender guidelines] are excessive, in light of the nature of [defendant's] recidivism, for the Guidelines for Career Offenders are the same regardless of the severity of the crimes, the dangers posed to victims' and bystanders' lives, and other appropriate criteria. A sentence that satisfies only the Guidelines would be "greater than necessary, to comply with the purposes" set forth in the statute."); United States v. Phelps, 2005 WL 984156, at *6 (E.D. Tenn. April 1, 2005) (noting, "[i]t is not unusual that the technical definitions of "crime of violence" and "controlled substance offense" operate to subject some defendants to not just substantial, but extraordinary, increases in their advisory Guidelines ranges. In some of these cases, the Court believes a non-Guideline sentence may be sufficient, but not greater than necessary, to both comply with Congress's desire to punish recidivism and the purposes of sentencing set out in § 3553(a)(2).")

Hernandez faces a minimum mandatory term of incarceration of 120 months. This length of imprisonment is eight times greater than that served by Hernandez at any time previously, an appropriate magnitude of difference. Cf. Mishoe, 241 F.3d at 220 (noting that a defendant who had twice served

23

five- or six-year terms and thereafter committed another serious offense might be adequately deterred by a sentence of fifteen or twenty years).

Finally, in considering the remaining sentencing factors under 18 U.S.C. § 3553(a), the Court must take into account "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). Since Booker, a growing number of courts have "held that sentencing judges are `no longer prohibited from considering the disparity between co-defendants in fashioning a reasonable sentence.'" Ferrara v. United States, -- F.3d --, 2005 WL 1205758, at *11 (D. Mass. May 13, 2005) (quoting United States v. Hensley, No. 2:04 CR 10081, 2005 WL 705241, at *2 (W.D. Va. Mar. 29, 2005)); see also United States v. McGee, -- F.3d --, 2005 WL 1324815, at *17 (7th Cir. June 3, 2005); Simon v. U.S., 361 F. Supp. 2d 35, 49 (E.D.N.Y. 2005).[5]

---

[5] It should be noted that in an unpublished summary order that was entered after Booker and Crosby were announced, the Second Circuit reaffirmed the construction of section 3553(a)(6) announced in United States v. Joyner, 924 F.2d 454, 460 (2d Cir. 1991) (stating that "[t]o reduce the sentence by a departure because the judge believes that the applicable range punishes the defendant too severely compared to a co-defendant creates a new and entirely unwarranted disparity between the defendant's sentence and that of all similarly situated defendants throughout the country"). See United States v. Toohey, 2005 WL 1220361, at *2 (2d Cir. May 23, 2005). The Toohey court stated:

> [Even after Booker,] Joyner's construction of the role the Guidelines play in [the] § 3553(a)(6) consideration remains the same. See United States v. Booker, 125 S.Ct.

24

Hernandez has two similarly situated co-defendants, Mr. Bernard Wheeler (hereinafter, "Wheeler") and Mr. Candido Serrano (hereinafter, "Serrano"). Both of these co-defendants were pitchers in the Daly Avenue Organization; both plead guilty; and both were designated career offenders under U.S.S.G. § 4B1.1. Both Wheeler and Serrano were sentenced to terms of incarceration of 120 months followed by five years of supervised release.

The Court takes note of these sentences imposed on Hernandez's similarly situated co-defendants in an effort to be aware of the "just punishment" afforded other co-defendants and thereby "avoid unwarranted sentence disparities" in accordance with 18 U.S.C. § 3553(a)(6).

**The Sentence**

For the instant offense, Hernandez is sentenced to 120 months imprisonment and five years supervised release. As

---

at 761, 767 (emphasizing the continued importance of the Guidelines to avoiding unwarranted sentencing dispari-
ties). Thus, a sentencing court does not reasonably satisfy its statutory obligation under § 3553(a)(6) when it only compares discrete cases or defendants. Rather, to identify a reasonable sentence, § 3553(a)(6) expects a court to consider whether a defendant is favored or disfavored by a particular sentence "compared to all those similarly situated defendants." United States v. Joyner, 924 F.2d at 461.
Id.

Hernandez has been detained without bail since his arrest, he is not a candidate for voluntary surrender pursuant to 18 U.S.C. § 3143(a)(2).

A special assessment fee of $100 payable to the United States is mandatory and due immediately. Because Hernandez lacks financial resources and in consideration of the factors listed in 18 U.S.C. § 3572, no fine is imposed.

As mandatory conditions of supervised release, Hernandez shall (1) abide by the standard conditions of supervision (1-13); (2) not commit another federal, state, or local crime; (3) not illegally possess a controlled substance; and (4) not possess a firearm or destructive device.

The mandatory drug testing condition is suspended due to imposition of a special condition requiring drug treatment and testing.

Hernandez shall participate in a program approved by the United States Probation Office, which program may include testing to determine whether he has reverted to using drugs or alcohol. The release of available drug testing evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer, is hereby authorized. Hernandez is required to contribute to the costs of services rendered (co-

payment), in an amount determined by the Probation Officer, based on ability to pay or availability of third-party payment.

Hernandez shall report to the nearest Probation Office within 72 hours of release from custody and shall be supervised by the district of residence.

This sentence is subject to modification at the sentencing hearing now set for June 13, 2005.

It is so ordered.

New York, NY
June  /0  , 2005

ROBERT W. SWEET
U.S.D.J.

27